**[NOT FOR PUBLICATION — NOT TO BE CITED AS PRECEDENT]**

# United States Court of Appeals
## For the First Circuit

No. 00-1848

HECTOR NEGRON TORRES,
Plaintiff, Appellant,

v.

STATE INSURANCE FUND CORPORATION ET AL.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gilberto Gierbolini, Senior U.S. District Judge]

Before

Torruella, Chief Judge,
Coffin, Senior Circuit Judge,
and Selya, Circuit Judge.

Jose Martinez-Custodio for appellant.
Marcelle D. Martell Jovet, with whom James W. McCartney and Cancio, Nadal, Rivera, Díaz & Berríos were on brief, for corporate appellee.
Leticia Casalduc Rabell, Assistant Solicitor General, Puerto Rico Dep't of Justice, with whom Gustavo A. Gelpi, Solicitor General, and Rosa N. Russe Garcia, Deputy Solicitor General, were on brief, for individual appellees.

March 27, 2001

**SELYA, Circuit Judge.** Puerto Rico's central government operates under a civil service system premised on the merit principle. See 3 P.R. Laws Ann. § 1311. Career positions ordinarily are filled according to a set protocol. Id. § 1333. The system, however, permits temporary appointments, commonly called transitory appointments, to career positions in specified circumstances. See id. § 1333(12)(a)-(f).

On June 16, 1995, hierarchs at the State Insurance Fund (the SIF), responding to a vacancy unexpectedly created by an injury to a career employee, granted Javier Vélez Irizarry (Vélez) a transitory appointment as Administrative Official I (AO) at the SIF's Utuado office. At that time, plaintiff-appellant Héctor Negrón Torres (Negrón) held a lesser position, Oficial Pagador Auxiliar I, in the same office. It is undisputed that the AO position is a career position which does not involve policymaking.

On August 19, 1996, the SIF published a hiring call for the AO position at Utuado. The appellant seasonably applied for the post. After the application period closed, the SIF promptly issued a certificate of eligible candidates. See 3 P.R. Laws Ann. § 1333 (outlining general provisions governing recruitment and selection of career personnel); SIF Pers. Reg. § 9.8(1) (describing procedures for certifying and selecting candidates).

The appellant was fifth on the list, but Vélez (who also had applied) did not make the cut. The matter languished until May 30, 1998, when the SIF conferred career status on Vélez, retroactive to January 1, 1998.

Invoking 42 U.S.C. § 1983, the appellant sued the SIF and two of its high-ranking officials: Oscar Ramos, the chief administrator, and Ada Guzmán, the human resources director. He did not challenge Vélez's original appointment as a transitory employee, but, rather, claimed that the defendants had deprived him of a career appointment to the AO position on the basis of his political affiliation (the appellant is a member of the Popular Democratic Party whereas Vélez and the individual defendants are alleged to be members of the rival New Progressive Party). The defendants denied liability and in due course moved for summary judgment. See Fed. R. Civ. P. 56(c). After extensive briefing, the district court granted the motion. Negrón Torres v. SIF, Civ. No. 98-2013 (D.P.R. May 9, 2000) (unpublished). This appeal ensued.

We have frequently preached, but perhaps too infrequently practiced, the philosophy that "when a lower court produces a comprehensive, well-reasoned decision, an appellate court should refrain from writing at length to no other end than to hear its own words resonate." Lawton v. State Mut. Life

-4-

<u>Assur. Co.</u>, 101 F.3d 218, 220 (1st Cir. 1996).  This case fits the <u>Lawton</u> model.  Consequently, we resist the temptation to repastinate ground that is already well-ploughed and affirm substantially on the basis of the lower court's thoughtful opinion.  We add only two relatively brief sets of comments.

**First**:  Vélez's permanent appointment was not an isolated event.  As the district court explained, the legislature enacted, and the governor signed into law on December 28, 1995, Act No. 256 — a statute that granted permanent career status to hundreds of transitory employees then working for the central government.  The SIF, though an arm of the government, is organized as a separate corporation, and its employees therefore were excluded from the benefits of Act No. 256.  The evidence is uncontradicted that, in order to remedy this perceived inequity, the SIF immediately began to explore the possibility of granting career status to its own transitory employees.[1]  The groundwork for this effort was laid well before the SIF published the call for the AO position at Utuado, and the effort continued unabated after the position was posted.  Progress was understandably slow:  Guzmán first had to obtain a

---

[1]More precisely put, the SIF aspired to grant career status to those transitory employees who met Act No. 256's requirements as to length of service and the like.  The appellant does not dispute that, as of the relevant date (January 1, 1998), Vélez met these requirements.

green light from the Director of Labor Relations, and then bargain with several unions. It was not until October 26, 1996, that the SIF and the unions were able to stipulate to converting 265 transitory employees into career employees. It took another year to work out the arrangements with an association representing managerial employees to convert forty-six additional transitory employees (including Vélez) to career status.[2]

The appellant has not adduced any significantly probative evidence to show either that this agency-wide personnel reclassification was a sham or that the AO position was improperly included in the conversion. Absent any such showing, the district court did not err in granting brevis disposition in the defendants' favor. Cf. Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 247-48 (1st Cir. 1997) (explaining that in order to make out a case of discrimination in the context of changes made pursuant to a company-wide personnel policy, the plaintiff must show that the policy itself was either a sham or discriminatorily applied to her).

---

[2]The appellant makes much of the fact that the AO appointment process stalled for upwards of a year and a half. He offered no evidence, however, of the time typically taken to fill such positions. Moreover, he offered no evidence that the SIF, during the same period, consummated permanent appointments to other career positions occupied by transitory employees.

**Second**:  The appellant hinges virtually his entire case on the contrast between his party affiliation and Vélez's.  The law is crystal clear, however, that proving a causal link between a challenged personnel action and an asserted political animus requires more than merely juxtaposing a person's political affiliation with the fact that he arguably was treated unfairly.  See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990).  By the same token, the fact that those charged with making personnel decisions are affiliated with a political party different than an unsuccessful aspirant's, without more, will not suffice to show political discrimination and thereby forestall summary judgment.  See, e.g., Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 7-8 (1st Cir. 2000); Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1172 (1st Cir. 1988).

The charge of political discrimination is particularly incongruous here.  While the appellant claims to be an active member of the Popular Democratic Party, there is not a shred of evidence that either of the decisionmakers — Ramos or Guzmán — knew as much.  Thus, the claim that they discriminated against the appellant because of his party membership cannot survive scrutiny.  See López-Carrasquillo v. Rubianes, 230 F.3d 409, 414 (1st Cir. 2000) (noting that speculative assertions regarding political discrimination are not enough to withstand a Rule 56

-7-

motion); <u>Rivera-Cotto</u> v. <u>Rivera</u>, 38 F.3d 611, 613-14 (1st Cir. 1994) (similar).

We need go no further.[3]  While we can empathize with the frustrations of a civil servant who earns a place on a list of eligibles for a better job only to have the competition aborted by an across-the-board reclassification, there is no principled way to say, on this record, that political animus played a part.  Hence, for the reasons stated in the district court's meticulous opinion, as augmented by our decurtate comments, we affirm the judgment below.

**Affirmed.**

---

[3]We note that the appellant, who was merely one of several individuals on the eligibles' list, has a decidedly tenuous claim to the AO position.  Because the case is easily resolved on other grounds, however, we do not pursue this apparent weakness.