Jose Luis **ALVAREZ SEPULVEDA,** et al., **Plaintiff(s),**

v.

Commonwealth of **PUERTO RICO,** et al., **Defendant(s).**

Civil No. 99–2021 (JAG).

United States District Court, D. Puerto Rico.

Aug. 1, 2002.

Raul S. Mariani–Franco, San Juan, PR, for Plaintiffs.

Marie L. Cortes–Cortes, Judith Martinez–Fortier, Commonwealth Department of Justice, Federal Litigation Division, Eduardo A. Vera–Ramirez, Landron & Vera, LLP, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

Pending before the Court are plaintiffs' objections to United States Magistrate–Judge Justo Arenas's Report and Recommendation on the various Motions to Dismiss filed by the defendants. (Docket No. 33.) In the Magistrate–Judge's Report and Recommendation, plaintiffs object to: the Magistrate–Judge's recommendation that (1) plaintiffs' supplemental state law causes of action should be dismissed; (2) that Night Times Inc.'s federal claim for lack of standing be dismissed; and (3) that plaintiffs' supervisory liability claims against defendants Wanda Rivera, Toledo Dávila, González Cabán and Xenia Vélez be dismissed. After careful review of the Report and Recommendation (Docket No. 33), the Court ADOPTS it in its entirety.

## FACTUAL BACKGROUND

The alleged incident occurred on May 14, 1999 at a discotheque owned by Night Times, Inc. (hereinafter "Night Times") located on Roosevelt Avenue in Puerto Nuevo, Puerto Rico. (Docket No. 1, Complaint at 9, ¶ 3.7.) When the operative facts giving rise to the Complaint occurred, the Treasury Department of Puerto Rico had ultimate authority and supervi-

---

1. Mario Arroyo, a third-year student at Tulane Law School, assisted in the research and preparation of this opinion.

sion over Alcoholic Beverage Unit agents (hereinafter "ABU agents"). Secretary of the Treasury Xenia Vélez Silva and Director of the Alcoholic Beverage Unit Julio González Cabán were jointly responsible for carrying out government policy with respect to selecting, training, and supervising ABU agents. (*Id.* at 4, 5, ¶ 2.5, ¶ 2.8.) Moreover, at all pertinent times, Pedro Toledo Dávila oversaw a tactical police force called the "Fuerza de Choque" or "Unidad de Operaciones Tácticas." This group of agents was employed and supervised by Wanda Rivera. (*Id.* at 8, ¶ 3.2.)

At approximately 10:15 p.m. on May 14, 1999, a substantial number of persons were waiting in line to enter the Night Times discotheque. A hurried, unmarked car with tinted glass windows stopped in front of the entrance of the discotheque. Two individuals, wearing civilian clothing, exited the vehicle, rushed toward the entrance and eventually jumped over and accessed the security perimeter. Once the security perimeter was breached, the discotheque's security employees ordered the entrance closed.

As the two individuals were forcibly trying to open the entrance doors, plaintiff José Luis Álvarez Sepúlveda (hereinafter "Álvarez") arrived. He asked the two individuals for identification and the reasons for their action. In response, one individual stated that he was an agent for the ABU. The same individual then demanded that Álvarez open the doors. Álvarez asked the individuals to present proper identification and to identify themselves by name. The two individuals, each time, refused and continued their attempts to open the entrance doors with force.

A number of uniformed police officers had arrived at the entrance to the dis-

cotheque during the conversation with Álvarez. The two ABU officers told the arriving police officers that Álvarez was refusing to open the entrance to the discotheque. Immediately co-defendants Herbert Díaz and Walter Suárez grabbed Álvarez by the neck and arms. Under physical restraint, Álvarez ordered the doors of the discotheque open. Once inside, the officers ordered the lights to be turned on and allegedly told the persons waiting in line that the discotheque would be closed. Throughout this time, Reinaldo Rivera Colón, Wanda Rivera, Herbert Díaz, Walter Suárez, Yadira Díaz, Vicent Class, José Morales, and Jorge Chacón were present and provided backup assistance to the ABU agents. The agents then asked Álvarez for the discotheque permits. As he was searching for the documents, Edgardo Salas Matos (hereinafter "Salas") walked into the office, announced himself as the supervisor of the operation and ordered Álvarez arrested. Co-defendants Richard Colón Matos (hereinafter "Matos") and Camilo Rosado (hereinafter "Rosado") arrested and handcuffed Álvarez. The agents then led Álvarez to the patrol car where allegedly the ABU agents insulted, laughed at, and physically assaulted him. After being placed in the Police Station cell, Álvarez was allowed to make a phone call on his cellular phone.

A short time after Álvarez had been escorted from the discotheque, Álvarez' wife, Grisel Figueroa Medina (hereinafter "Figueroa") arrived. Figueroa then showed Salas the required valid and current operating permits. By this time, the discotheque had been closed for allegedly one and a half hours.[2]

---

**2.** Plaintiffs withdrew the issue of whether Mrs. Figueroa or the Conjugal Partnership composed by her and Mr. Álvarez have a federal cause of action. The plaintiffs do not object to the dismissal of Mrs. Figueroa's claim for redress pursuant to 42 U.S.C.1983. Therefore, this Court will ADOPT the unobjected portions of the Magistrate–Judge's

## Standard of Review

A district court may, on its own motion, refer a pending matter to a United States Magistrate–Judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. 28 U.S.C. § 636(b)(1). The Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. See *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Lopez v. Chater*, 8 F.Supp.2d 152, 154 (D.P.R.1998). The Court may accept, reject or modify, in whole or in part, the Magistrate–Judge's recommendations. "Failure to raise objections to the report and recommendation waives [that] party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992) (citations omitted).

## Motion to Dismiss Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may not be dismissed unless it appears beyond doubt that plaintiffs can prove no set of facts in support of her claim which would entitle her to relief. See *Brown v. Hot, Sexy, and Safer Prods., Inc.*, 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. See *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st

well-reasoned report and recommendation relative to the claims concerning Mrs. Figuer-

Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiff is responsible for putting her best foot forward in an effort to present a legal theory that will support her claim. *Id.*, at 23 (citing *Correa–Martinez*, 903 F.2d at 52). Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

## DISCUSSION

### I. Álvarez' First Objection:

■ Álvarez first objects to the Magistrate–Judge's Report and Recommendation that plaintiffs' supplemental state law causes of action for negligence under Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. § 5141 (1997) be dismissed. The Magistrate Judge indicates that: (1) "inclusion of the state law claim would cause differing standards to be used in analyzing defendants liability" (Docket # 33 at 7) and (2) the facts required to prove the loss of the corporation, are not essential to prove any Federal claim of the individual plaintiffs. Álvarez, however, argues that the causes of action are related and that the different standards to be used will not confuse the jury. The Court disagrees. The inclusion of the state law claim would require different standards to be applied. Under Article 1802, the fault

oa.

standard is negligence. *Sociedad De Ga-nanciales v. González Padín Co. Inc.,* 117 D.P.R. 94 (1986). Plaintiffs' federal claims for violations under 42 U.S.C. § 1983 require more than mere negligence. The fault standard under § 1983 generally requires deliberate conduct. A jury could become easily confused in reaching a verdict on two different legal theories of liability because of the different burdens of proof applicable to the federal and state law claims. Likelihood of jury confusion in treating these divergent legal theories of relief may justify separating state and federal claims for trial. *United Mine Workers of America v. Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139; (also see *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)).

The court also finds that the plaintiff has failed to show that the corporation has a valid and actionable federal cause of action separate from the other plaintiffs in the case. The facts required to prove the damages to the corporation, in terms of lost earnings, are not essential to prove any federal claim of the individual plaintiffs. Night Times, as a corporation, has a separate juridical identity from that of the other plaintiffs in this case. It is free to present its tort claims in State Court, and have them decided in that judicial forum under state law. Accordingly, the court adopts the Magistrate–Judge's recommendation and will grant the motion to dismiss the supplemental state law claims under Article 1802 of the Civil Code of Puerto Rico.

## II. Álvarez' Second Objection:

■ Álvarez' second objection is to the Magistrate Judge's recommendation that Night Times' federal claim for lack of standing be dismissed. The Magistrate Judge in his recommendation cites *Lynch v. Household Fin. Corp.,* 405 U.S. 538, 552, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972) stating that "property does not have rights,

people have rights. The right to enjoy property without unlawful deprivation ... is in truth a personal right." The plaintiff, on the other hand, claims that with regards to the Section 1983 claim, Night Times should be regarded as a "person" who suffered a deprivation of property rights because under 42 USC § 1983, corporations are "persons" who have standing to sue. The court agrees with the plaintiff that a private corporation is clearly a "person" within the meaning of the Equal Protection and Due Process Clauses, *Grosjean v. American Press Co.,* 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936); and also within the meaning of section 1983. *Fulton Market Cold Storage Co. v. Cullerton,* 582 F.2d 1071, 1079 (7th Cir.1978), *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979).

The Magistrate Judge's Report and Recommendation, however, was also based on Night Times' failure to meet the requirements of Article III standing to state a due process claim in this case. Whether a plaintiff is a "person" within the meaning of section 1983 is a separate question from whether that plaintiff has standing to raise the claims alleged in its complaint. For instance, a shareholder is a "person" for section 1983 purposes, but may lack standing to sue under section 1983 on behalf of the corporation. *Erlich v. Glasner,* 418 F.2d 226 (9th Cir.1969).

So even if Night Times were to be recognized as a person, it would still have to meet three requirements that establish the irreducible constitutional standing minimum of Article III and it does not meet them. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is "concrete and particularized" and "actual or imminent." *Lujan v. Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130. Second, a causal connection must exist be-

tween the injury and the conduct complained of; the injury must be fairly traceable to the challenged action. *Id.* Third, it must be likely that the injury will be redressed by a favorable decision. *Id.*

In the case at hand, the corporation did not suffer any deprivation of constitutionally protected rights. The alleged conduct was not directed at Night Times. The deprivation, if any, was suffered by Álvarez. Any injury to Night Times would be simply too abstract and speculative. Additionally the causation element is absent. Thus, the court ADOPTS the Magistrate-Judge's Recommendation and dismisses Night Times' claim.

### III. Álvarez' Third Objection:

 Álvarez' third objection concerns the Magistrate Judge's recommendation that plaintiffs' supervisory liability claims against defendants Wanda Rivera, Toledo Dávila, González Cabán and Xenia Vélez be dismissed. Plaintiffs allege that Vélez and González are liable for the Alcoholic and Beverages Unit officers' misconduct inasmuch as their policies resulted in inadequate selection and/or supervision and/or training and/or discipline of the unit's officers. Plaintiffs also claim that Superintendent Toledo and Captain Rivera are liable as supervisors to the extent that they have encouraged, condoned or been deliberately indifferent to Vice Enforcement Division police officers' behavior. They also allege that Toledo and Rivera were aware of previous incidents of police misconduct. Plaintiffs further contend that Toledo's and Rivera's failure to train amounts, as a matter of law, to reckless or callous indifference to the federally protected rights of others under the Constitution.

The Magistrate Judge concluded that plaintiffs never proffered any evidence against the defendants. The plaintiff, however, claims that at this stage they have no obligation to proffer evidence and that they only have to include factual allegations respecting each material allegation in their claim. The Court agrees in part with the plaintiff that the Magistrate Judge has misconstrued the pertinent standard at this stage of the proceedings. Álvarez, however, has failed to establish a causal connection in the Complaint between defendants' conduct and Álvarez arrest inasmuch as the Complaint does not meet the heightened pleading requirement established by the United States Court of Appeals for the First Circuit in civil rights cases. See *Judge v. City of Lowell,* 160 F.3d 67(1st Cir.1998) (A bare conclusory allegation of an intent to discriminate is insufficient; specific non-conclusory facts from which such an intent may reasonably be inferred is required.)

It is axiomatic that section 1983 imposes liability only upon those who actually cause a deprivation of rights. See *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271(1986); *Camilo–Robles v. Zapata,* 175 F.3d 41 (1st Cir.1999). Supervisory liability may not be grounded upon a theory of respondeat superior. See *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Figueroa–Torres v. Toledo-Davila,* 232 F.3d 270, 279 (1st Cir.2000); *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 91 (1st Cir.1994). Thus, "[g]iven the lack of respondeat superior liability under Section 1983, a supervisor's liability is not for the use of excessive force . . . but for distinct acts or omissions that are a proximate cause of the use of that force." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); see also *Figueroa v.Aponte-Roque,* 864 F.2d 947, 953 (1st Cir.1989). The Supervisor's conduct or inaction must have been intentional, *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others." *Gutierrez–*

Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir.1989); Gaudreault v. Salem, 923 F.2d 203, 209 (1st Cir.1990). "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." See Febus–Rodriguez v. Betancourt–Lebron, 14 F.3d 87, 92 (1st Cir.1994). Moreover, "an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials," must be established. Gutierrez–Rodriguez, 882 F.2d at 562 (quoting Rizzo v. Goode, 423 U.S. 362 at 371, 96 S.Ct. 598, 46 L.Ed.2d 561). Álvarez factual allegations are insufficient to meet the stringent criteria for "failure to train" claims. Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir.1998) (citations omitted). It is well established that "an arguable weakness in police training (or supervision does) not amount to a policy of failure to train arising from deliberate indifference to citizen's constitutional rights." See Burns v. Loranger, 907 F.2d 233, 239 (1st Cir.1990).

Álvarez also fails to furnish legally sufficient facts showing that, at the time of Álvarez' arrest, there was a widespread violation of civil rights known to Toledo and Rivera which they failed to address. Moreover, even assuming that a widespread violation of civil rights would have existed, no reasonable inference can be drawn from the Complaint to conclude that Toledo and Rivera were callously negligent, or that they incurred in willful blindness, or that they had constructive knowledge of these situations, to such a degree that their negligence can be affirmatively linked to the officer's misconduct. Plaintiffs' allegations do not give rise to a section 1983 cause of action against defendants Vélez, Gonzalez, Toledo and Rivera. Accordingly, this Court will ADOPT for reasons different from those stated in the Report and Recommendation those portions relative to the dismissal of the claims under the theory of supervisory liability found in the Complaint against defendants Vélez, Gonzalez, Toledo and Rivera.

## CONCLUSION

After analysis and review of the Magistrate–Judge's Report and Recommendation, the Court ADOPTS Magistrate–Judge Justo Arenas's Report and Recommendation. (Docket No. 33). The plaintiffs' supplemental causes of action should be dismissed. Night Times' federal claim must also be dismissed. The plaintiffs' supervisory liability claims against defendants Wanda Rivera, Pedro Toledo Dávila, González Cabán and Xenia Vélez must likewise be dismissed. A Trial Scheduling Order setting forth a Pre–Trial and Settlement Conference date, as well as a Trial date, shall issue simultaneously with this opinion and order. Partial Judgment in accordance with this opinion shall be entered.

IT IS SO ORDERED.