Hector E. COLON RODRIGUEZ,
et al., Plaintiffs,

v.

Carlos D. LOPEZ BONILLA,
et al., Defendants.

No. CIV. 02–1949(SEC).

United States District Court,
D. Puerto Rico.

Nov. 4, 2004.

Francisco R. González–Colón, Hector A. Calle–Ortiz, Idalia M. Diaz–Pedrosa, San Juan, for Plaintiffs.

Johanna M. Emmanuelli–Huertas and Jorge Matienzo–Luciano, Ponce, Mariana Negron–Vargas, Commonwealth Dept. of Justice, Federal Litigation Division, San Juan, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court, among others, is Defendants' motion for summary judgment (Docket # 65). Plaintiffs have opposed Defendants' motion (Docket # 81). Defendants have replied (Docket # 87) and Plaintiffs, in turn, sur-replied (Docket # 108).[1] After carefully considering the parties' arguments, as well as the applicable law, we find that Defendants' motion must be **GRANTED.**

### Factual Background[2]

In 1995, after a bidding process, Co-plaintiff Héctor Colón entered into a lease agreement with the Municipality of Rincón for the operation of an ecological theme gift shop. The contract was to be renewed, and was actually renewed, annually until October 1, 2000 when Co-plaintiff Colón entered into a five-year contract with the Municipality, represented by then Mayor Rubén Caro–Muñiz of the New Progressive Party (NPP) (Docket # 101— Exh. # 17). On February 25, 2002, after some dispute with regards to compliance with the terms of the lease agreement, the new administration, under Co-defendant Héctor López–Bonilla of the Popular Democratic Party (PPD), sent Co-plaintiff Colón a letter notifying him that it intended to rescind the contract within thirty

---

1. Plaintiffs' first sur-reply was stricken by the Court upon Defendants' motion for noncompliance with Local Rule 7.1(e). By order of even date, Plaintiffs' last section in the second sur-reply was also stricken.

2. For a procedural background of the case, see the Order of May 17, 2004 (Docket # 56).

(30) days (Docket # 101—Exh. # 37). Then, on May 29, 2001, Co-plaintiff Colón placed a bid for the lease of the cafeteria at the lighthouse park. The auction was not adjudicated to any of the participating bidders. Plaintiffs did not appeal said decision. Plaintiffs then filed the instant complaint on June 19, 2002 (Docket # 1).

**Standard of Review**

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *NASCO, Inc. v. Pub. Storage, Inc.*, 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the nonmoving party. *U.S. v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989); *Medina–Munoz v. R.J. Reynolds Tobacco*, 896 F.2d 5, 8 (1st Cir.1990) ("[a] 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir.1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra*, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez v. Colon*, 54 F.3d 980, 983–84 (1st Cir.1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." *Id.* (*citing Greensburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machs.*, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case," *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1984); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mut. Life Assurance Co. of Am.*, 101 F.3d 218, 223 (1st

Cir.1996). Furthermore, "the nonmovant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. ... Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina-Munoz,* 896 F.2d at 8, (*quoting Mack v. Great Atl. & Pac. Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989)) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Unless the non-moving party controverts this statement, all the material facts set forth therein "shall be deemed to be admitted." *Id.; Cosme-Rosado v. Serrano-Rodriguez,* 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See, e.g., Orbi, S.A. v. Calvesbert & Brown,* 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavarez v. Champion Prods., Inc.,* 903 F.Supp. 268, 270 (D.P.R.1995).

## Applicable Law and Analysis

Plaintiffs, Héctor E. Colón-Rodríguez, in his personal capacity and as President of Fundación Eco-Cultural, Inc. (hereinafter, "the Foundation"), The Eco-Lógic-Co., Inc. & TM ("Eco-Lógic"), and the Foundation, filed the instant civil action seeking compensatory and pecuniary damages, declaratory judgment, and injunctive relief against Defendants, Carlos D. López-Bonilla, in his personal capacity and in his official capacity as mayor of the Municipality of Rincón; Alexis Rosado, Director of the Department of Public Works of the Municipality of Rincón and member of the Municipality's Procurement Board; Zayda Rodríguez-Morales, in her personal capacity and as President of the Municipality's Procurement Board; and the Municipality of Rincón, for the alleged violations of Plaintiffs' civil rights (Docket # 1). Specifically, Plaintiffs alleged that Defendants violated their rights protected by the First and Fourteenth Amendments. Plaintiffs also bring forth claims for violations of the Commonwealth's constitution and laws under our supplemental jurisdiction. The complaint alleges in its pertinent part that:

> Plaintiff [Colón's] contract was terminated, as a persecution discriminating for his political believes [sic] as a member of the opposition party or identified with the past Administration or as a person identified with the past governmental administration and violating his First Amendment rights of free speech and association.

(Docket # 1—¶ 40).

> Plaintiff [Colón's] contract was terminated without due process, not even a pre-determination hearing, not provided a meaningful informal hearing, not notified [of] his right to appeal the decision since he had a property right protected by a contractual agreement for an additional five years, state law, usage, custom, municipal regulations and practice. This is a violation of Plaintiff[']s 14th Amendment rights by an unlawful deprivation of his property, liberty, substan-

tive and procedural due process and equal protection rights.

(Docket # 1—¶ 41).

On the other hand, Defendants contend that: (1) the corporate Plaintiffs do not have a cause of action under § 1983 because their personal rights were not involved in the rescission of the contract; (2) Co-plaintiff Colón does not have a cause of action under the Due Process Clause because he was given all procedural guarantees afforded to him under Puerto Rico law; (3) the rescission of the contract was not based on political animus and that even assuming that political animus played a role in the decision to rescind the contract, there were numerous nondiscriminatory reasons for the rescission; and that (4) Co-defendants, officers of the Municipality, are covered by qualified immunity since their decision was taken following Puerto Rico's laws and regulations and was based on good cause (Docket # 65).

## Section 1983

Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. *See Graham v. M.S. Connor,* 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under Section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989); *Saugus v. Voutour,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986); *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir.1985).

Second, a plaintiff must show that the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Parratt,* 451 U.S. at 535, 101 S.Ct. 1908; *Gutierrez–Rodriguez,* 882 F.2d at 559. This second prong has two aspects: 1) there must have been an actual deprivation of the plaintiff's federally protected rights; and 2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. *See Gutierrez–Rodriguez,* 882 F.2d at 559; *Voutour,* 761 F.2d at 819. In turn, this second element of causal connection requires that the plaintiff establish: 1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gutierrez–Rodriguez,* 882 F.2d at 562; *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir.1989); and 2) that the defendant's conduct was intentional, *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights. *See Gutierrez–Rodriguez,* 882 F.2d at 562.

## Standing to Sue Under Section 1983

Defendants in the case at bar aver that the corporate Plaintiffs, both chartered under the laws of Puerto Rico and whose shares are solely owned by Co-Plaintiff Colón, do not have standing to sue under § 1983. It is well established that corporations are "persons" within the meaning of the Equal Protection and Due Process clauses and Section 1983. *Grosjean v. Am. Press Co.,* 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936); *Fulton Market Cold Storage Co. v. Cullerton,* 582 F.2d 1071, 1079 (7th Cir.1978). However, "whether a plaintiff is a 'person' within the meaning of section 1983 is a separate question from whether that plaintiff has standing to raise the claims alleged in its complaint." *Alvarez–Sepulveda v. Com-*

monwealth of Puerto Rico, 218 F.Supp.2d 170, 174 (D.P.R.2002).

The complaint in the instant case does not allege any direct violations committed by Defendants against the corporate Plaintiffs. First, the corporate Plaintiffs were not parties to the contract (Docket # 65, SUF # 5, Exh. 17). Second, it was Co-plaintiff Colón, and not the corporate Plaintiffs, who placed a bid for the lease of the cafeteria at the lighthouse park (Docket # 65, SUF # 49, Exh. 3; admitted at Docket # 81, SUF # 27). Third, the complaint does not allege any harassment directed at the corporate Plaintiffs or even any conduct that would impinge on the corporation's First or Fourteenth Amendment rights. The complaint does not even include the corporate Plaintiffs in the section labeled "Parties." The indirect effects, if any, of Defendants' actions on the corporate Plaintiffs does not give them Article III standing. *See Alvarez–Sepulveda,* 218 F.Supp.2d at 174–75. Accordingly, Co-plaintiff Eco–Lógic and the Foundation's federal claims will be **DISMISSED WITH PREJUDICE.** Moreover, because Co-plaintiff Colón does not have standing to bring an action on behalf of the corporate Plaintiffs, even if he is the sole shareholder, we also **DISMISS WITH PREJUDICE** any federal claims brought by Co-plaintiff Colón on behalf of the corporations. *See Gregory v. Mitchell,* 634 F.2d 199, 202 (5th Cir.1981)("a stockholder cannot maintain an action under the Civil Rights Act for damages suffered by a cor-

poration in which he owns shares"). We proceed to examine Defendants' remaining arguments for summary adjudication as to Co-plaintiff Colón.

**First Amendment—Freedom of Association**[3]

■ Political discrimination restrains freedom of belief and association, core activities protected by the First Amendment. *See Elrod v. Burns,* 427 U.S. 347, 354, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). To prevail on a political discrimination claim against Defendants, Co-plaintiff Colón must establish that he: 1) engaged in constitutionally protected conduct; and 2) that this conduct was a substantial or motivating factor in an adverse decision affecting him. *See Mt. Healthy City Sch. Dist. Bd. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Padilla–Garcia v. Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000). To meet this burden, Co-plaintiff Colón must show that there is a causal connection linking Defendants' conduct to his political beliefs. *See LaRou v. Ridlon,* 98 F.3d 659, 662 (1st Cir.1996). If Co-plaintiff Colón meets this burden, then Defendants have the opportunity to demonstrate, by a preponderance of the evidence, that the alleged adverse actions taken against Co-plaintiff Colón would have occurred even in the absence of his protected conduct. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. 568.

Political discrimination cases carry the implicit, yet obvious requirement that de-

---

**3.** Although Co-plaintiff Colón was not a government employee, he had a contract with the municipal government and is thus entitled to First Amendment guarantees. *See Truck Serv., Inc. v. City of Northlake,* 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996)(holding that the First Amendment provides protection to independent contractors similar to those afforded government employees); *Bd. of County Comm'rs v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2361, 135 L.Ed.2d 843 (1996)(hold-

ing that the First Amendment protects independent contractors from the termination or prevention of automatic renewal of at-will government contracts in retaliation for their exercise of the freedom of speech); *O'Hare Truck Serv., Inc. v. City of Northlake,* 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996)(extending First Amendment protection to an independent contractor from retaliation for the exercise of rights of political association or the expression of political allegiance).

fendants have knowledge of the plaintiff's political affiliation. *See Vazquez–Valentin v. Santiago–Diaz,* 385 F.3d 23 (1st Cir.2004)(reversing a jury verdict for the plaintiff finding that the plaintiff had failed to adduce sufficient evidence for the jury to reasonably infer that the plaintiff's political affiliation was a substantial or motivating factor in the adverse employment action). *See also Laskaris v. Thornburgh,* 733 F.2d 260, 265 (3rd Cir.1984)(finding that there was insufficient evidence to show that the defendants knew that the plaintiffs were Democrats).

■ Co-plaintiff Colón has not provided any evidence, apart from his self-serving allegations, that he is an NPP affiliate or that Defendants were aware of his alleged affiliation to the NPP. He alleges in the complaint that he "has participated in several NPP activities, sympathizes with the NPP and is identified with the NPP Administration." (Docket # 1, ¶ 3). Defendants, on the other hand, have proffered uncontested facts, admitted by Co-plaintiff Colón, which establish that he was not an NPP affiliate. For example, the record shows that for the 2000 elections, Co-plaintiff Colón did not contribute to the NPP mayoral candidate's campaign, and did contribute instead to the PPD candidate's campaign (Docket # 65, SUF # 17, 19, Exh. 1, 19 & 52; admitted at Docket # 81, SUF # 10 & 12). Co-plaintiff Colón donated $500.00 to Co-defendant Carlos López Bonilla's campaign. *Id.* In addition, the record reveals that on December 19, 2000 Co-plaintiff Colón requested from newly elected Co-defendant López assistance in obtaining employment with the new administration and expressed to him that he was eagerly awaiting the changeover (Docket # 65, SUF # 25, Exh. 20; admitted at Docket # 81, SUF # 18). Moreover, Co-defendant Zayda Rodríguez Morales stated in her sworn declaration that she did not know Co-plaintiff Colón's political affiliation and had never seen him in political activities (Docket # 101, Exh. 3). Even the daughter of the NPP mayoral candidate, the person in charge of maintenance in the lighthouse park since April of 2003, attested that she had not seen Co-plaintiff Colón in political activities and was not aware of his political affiliation (Docket # 101, Exh. 5).

In support of his political discrimination claim, Co-plaintiff Colón makes reference to an incident occurring in May of 2003 when Co-defendant López went to the lighthouse and allegedly threatened him shouting at him that he was the mayor and that he was going to "kick him out of the lighthouse" and ordered him to take the banners he had posted down (Docket # 81). This incident which occurred almost a year after the filing of the complaint does not controvert Defendants' uncontested facts with regards to Co-plaintiff Colón's political affiliation and their awareness thereof.

What the record does reflect is hostility and animosity between the individual parties. The animosity is particularly poignant in the comments alleged in the complaint and in the parties' filings. None of these comments reference the parties' political affiliation. For example, Co-plaintiff Colón makes much of a telephone conversation between him and Co-defendant Rosado on March 14, 2000 in which Co-defendant Rosado told him that he was the Governor's nephew and that he was calling to tell him that they were going to "throw him out" (Docket # 1, ¶ 24). Co-plaintiff also relies on the alleged derogatory comment made by Co-defendant López to him: "You are a faggot and I am going to throw you away from the lighthouse, because I'm Rincón's Mayor." (Docket # 81, Exh. 3). These comments only point to a personal animus against Co-plaintiff Colón and

make no reference to political affiliation or a politically discriminatory motive. *See Vazquez–Valentin,* 385 F.3d at 38, 2004 U.S.App. Lexis at \*41 (finding that the alleged comment by the new administration's mayor stating that they had to "clean house" was not sufficient to sustain the plaintiff's burden)(*citing Figueroa–Serrano,* 221 F.3d at 4 (holding that the alleged statement made by the mayor that "he was going to clean City Hall of most NPP employees" was insufficient to create a genuine issue of material fact on a causal connection between plaintiff's political affiliation and the adverse employment action)).

■ Since Co-plaintiff Colón has not established that Defendants' were aware of his affiliation to the NPP, or even that he was in fact an NPP affiliate, he has not created a genuine issue of material fact indicating that political affiliation was a motivating factor in any of the actions taken against him. Thus, we find that Co-plaintiff Colón does not have a cognizable claim under the First Amendment for political discrimination. Accordingly, we need not proceed any further and consider Defendants' *Mt. Healthy* defense or the qualified immunity doctrine. "The law is crystal clear … that proving a causal link between a challenged personnel action and an asserted political animus requires more than merely juxtaposing a person's political affiliation with the fact that he arguably was treated unfairly." *Negron–Torres v. State Ins. Fund Corp.,* 18 Fed.Appx. 7, 10 (1st Cir.2001) (*citing Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 58 (1st Cir.1990)). Co-plaintiff's self-serving conclusory allegations are insufficient to generate a genuine issue of fact as to the causal link between his political affiliation and the alleged adverse actions, particularly in light of the uncontested facts. *See Cosme–Rosado,* 360 F.3d at 48 (*citing*

*Figueroa–Serrano v. Ramos–Alverio,* 221 F.3d 1 (1st Cir.2000)(plaintiffs failed to adduce sufficient facts indicating that the Municipality discharged them based on party affiliation and they also failed to provide names or other specific factual information supporting their claim that the Municipality replaced them with new hires from the rival political party)). Thus, Plaintiffs' unsupported allegations cannot and do not survive Defendants' motion for summary judgment. Accordingly, Co-plaintiff Colón's political discrimination claims are hereby **DISMISSED WITH PREJUDICE.**

### First Amendment—Freedom of Speech

■ Plaintiffs' complaint also loosely alleges a freedom of speech claim under the First Amendment. "A government employee retains the First Amendment right to speak out, as a citizen, on matters of public concern, so long as the employee's speech does not unduly impede the government's interest, as employer, in the efficient performance of the public service it delivers through its employees." *O'Connor v. Steeves,* 994 F.2d 905, 912; *see Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *see also Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

On the other hand, speech airing personal grievances is not afforded constitutional protection. *Swineford v. Snyder County,* 15 F.3d 1258, 1270 (3d Cir.1994)(finding that "Swinefords' crusade was motivated, at least in part, by personal animus and self-interest")(*citing Connick,* 461 U.S. at 147, 103 S.Ct. 1684 ("When a public employee speaks … as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which

to review the wisdom of a personnel decision taken by a public agency ....")). The First Circuit has made clear that "speech disclosing public officials' malfeasance is protected while speech intended to air personal grievances is not." *Id.* at 1271.

■ "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684. However, "when an employee speaks out on a topic which is clearly a legitimate matter of inherent concern to the electorate, the court may eschew further inquiry into the employee's motives as revealed by the 'form and context' of the expression." *O'Connor*, 994 F.2d at 913–914.

■ During his deposition, Defendants asked Co-plaintiff Colón what acts he considered to have violated his First Amendment rights of free speech. Co-plaintiff Colón alleged two things: (1) that he is speaking for all the children of Rincón and Puerto Rico, who are deprived of education because the Mayor doesn't approve his projects and (2) that the mayor ordered him to take down some banners he had placed at the leased property (Docket # 65, Exh. 52). First off, as clear from our earlier discussion of the issue, Co-plaintiff Colón has no standing to bring a civil rights claim on behalf of the children of Rincón and Puerto Rico. Co-plaintiff's second claim is equally unavailing. The incident with the banners took place on May of 2003, over one year after the filing of the complaint. The complaint was never amended to include this incident. Moreover, the speech in the banners was not a "matter of public concern."

Co-plaintiff Colón's banners, located within the leased property, read as follows: "The Environmental Center is being constructed here, in spite of the fact that the Mayor, Carlos López Bonilla, opposes the education of children." (Docket # 65, SUF # 93, admitted at Docket # 81, SUF # 33). Looking at the content, form, and context of Co-plaintiff's statement as revealed by the record as a whole, *see Rankin*, 483 U.S. at 385, we find that Co-plaintiff's speech falls out of the ambit of speech protected by the First Amendment. As an entrepreneur, Co-plaintiff had a financial interest in the operation of his shop and in being granted other municipal contracts, which he consistently sought. In his personal vendetta against the Mayor, he had placed signs in the lighthouse bathrooms with the Mayor's home phone numbers, requesting that people call him to complaint about the bathrooms' conditions (Docket # 65, SUF # 68, admitted at Docket # 81, SUF # 27). Rather than bring attention to a situation of public interest, Co-plaintiff's speech concerned his personal grievances with the Mayor and did not create the "open debate" deserving First Amendment protection. Accordingly, Co-plaintiff's free speech claims will be **DISMISSED WITH PREJUDICE.**

### Fourteenth Amendment—Due Process

■ Co-plaintiff Colón also alleges a deprivation of his procedural due process rights. Under the Fourteenth (and or Fifth) Amendment of the Constitution, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. IV, § 1. Specifically, he alleges that Defendants infringed his due process rights when they terminated his five-year lease agreement.[4]

---

**4.** To the extent that Co-plaintiff intended to raise a due process claim regarding the pro-

curement process—the rejection of his bid to lease the cafeteria located at the lighthouse—

In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must first prove that he or she has a property interest as defined by state law and, second, that Defendants, acting under color of state law, deprived him or her of that property interest without a constitutionally adequate process. *See Mimiya Hosp., Inc. v. U.S. Dept. of Health & Human Servs.*, 331 F.3d 178, 181 (1st Cir.2003) ("It is well established that 'individuals whose property interests are at stake are entitled to notice and an opportunity to be heard.'") (*quoting Dusenbery v. United States*, 534 U.S 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002)); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir.1991). Moreover, property interests are not created by the Constitution; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In his opposition to Defendants' motion, Co-plaintiff avers that Defendants were under "the obligation, as part of Due Process, of at least meet with the Plaintiffs to discuss the payment of the damages cause[d] by their decision" (Docket # 81). Co-plaintiff cites to 31 L.P.R.A. § 4053 in support of his position. Said section states that: "If the lessor or lessee should not comply with the obligations mentioned in §§ 4051 and 4052 of this title, they may request the rescission of the contract and indemnity for losses and damages, or only the latter, leaving the contract in force." This section authorizes exactly what Defendants did. Faced with Co-plaintiff Colón's failure to comply with the terms and conditions of the lease agreement, Defendants opted to terminate the contract. Contrary to Co-plaintiff's belief, this section does not entitle him to any damages, but gives a choice to the aggrieved party, in this case, the Municipality.

Furthermore, the terms of the contract specifically authorized early termination of the contract. Section 17 states that "[t]he contract may be rescinded by any of the parties for lack of compliance or for any other reason by notifying in writing at least 30 days in advance." (Docket # 101, Exh. 17). In his opposition to Defendants' motion, Co-plaintiff Colón admitted to the following uncontested statements of material fact:

> From October 2000 and until March 2001, when he received a letter by the Comptroller's auditors, Colón had not made any of his rental payments under the October 2000 contract. On March 27 he paid $3,600.00

(Docket # 65, SUF # 26, admitted at Docket # 81, SUF # 19).

> The payment records at the Municipality of Rincón show that Colón has a history of late payment, sometimes up to 6 months of debt. . . .

(Docket # 65, SUF # 27, admitted at Docket # 81, SUF # 19).

> On February 25, 2002, the Municipality's attorney sent a letter to plaintiff Colón by which it gave 30 days notice for the rescission of the contract. . . .

(Docket # 65, SUF # 79, admitted at Docket # 81, SUF # 33).

Under Puerto Rico contract law, the terms of a contract are binding to the parties of said contract. 31 L.P.R.A. § 2994. Moreover, Section 4053 of the

said claim would fail as Co-plaintiff was notified of his right to appeal the decision and did not do so (Docket # 65, SUF # 54–55, Exh. 27 & 53, admitted at Docket # 81, SUF # 27).

Puerto Rico Civil Code allows for the rescission of contracts upon a party's failure to comply with its terms. 31 L.R.R.A. § 4053. Thus, although Co-plaintiff Colón had a property interest during the duration of the term of the contract, said interest was not without limit. Both the contract and Puerto Rico law expressly allow for the early termination of a contract for a party's failure to comply with its terms and conditions, among which is the timely payment of rent. Co-plaintiff Colón had a right to be notified within thirty (30) days of the termination. Defendants satisfied this requirement. Accordingly, Co-plaintiff Colón's due process claim is also **DISMISSED WITH PREJUDICE.**

### Fourteenth Amendment—Equal Protection

■ Finally, the complaint avers that Plaintiffs were denied the right to equal protection under the law pursuant to the Fourteenth Amendment of the U.S. Constitution. The party who asserts that governmental action violates the Equal Protection Clause must show that she is "the victim of intentional discrimination." *Tex. Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In order to state a claim under the Equal Protection Clause, Co-plaintiff Colón must prove not only that Defendants were aware of his membership in a protected group, but also that they acted because of it. *See Pers. Adm'r v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). Co-plaintiff Colón does not aver to what protected group he belonged to nor does he establish that Defendants were aware of such membership. Thus, Co-plaintiff's claim for equal protection is hereby **DISMISSED WITH PREJUDICE.**

### Supplemental Jurisdiction

Lastly, as to the pending pendent jurisdiction claims against Defendants, it is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims against these Defendants warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction.

■ Although District Courts are not obliged to dismiss pendent state law claims, in the usual case in which all federal law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness and comity-will point toward declining to exercise jurisdiction over the remaining state law claims. In such a case, state-law claims should be dismissed. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 5, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *citing Gibbs,* 383 U.S. at 726–27, 86 S.Ct. 1130; *see also Mercado-Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 896 (1st Cir. 1992); *Rivera v. Murphy,* 979 F.2d 259, 264 (1st Cir.1992); *Figueroa-Ruiz v. Alegria,* 896 F.2d 645 (1st Cir.1990); *cf. Vega v. Kodak Caribbean,* 3 F.3d 476, 478 (1st Cir.1993) (holding that "when the district court disposed of the ADEA claims, the pendent claims became subject to dismissal for want of subject matter jurisdiction"); *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 47 (1st Cir.1991) (stating that "since federal question jurisdiction hinged on that [dismissed] count, and there was no complete diversity of citizenship or other cognizable basis for the assertion of subject matter jurisdiction in the district court, the pendent state law claims were

properly dismissed under the rule of *United Mine Workers v. Gibbs*").

■ Supplemental jurisdiction should be declined in this case against Defendants in view that the state law claims substantially predominate over the federal claims. The Supreme Court has held that judicial economy, convenience, fairness and comity favors "a decision to relinquish jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon*, 484 U.S. at 350 n.5, 108 S.Ct. 614, *citing Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130. Since Plaintiffs are not entitled to any award under Section 1983 with respect to named Defendants, the only award Plaintiffs could, in any event, pursue against them would be under the Commonwealth statutes. Therefore, Plaintiffs' claims against Defendants, under the laws and the Constitution of the Commonwealth of Puerto Rico will be **DISMISSED WITHOUT PREJUDICE.**

### Conclusion

For the reasons set herein, Plaintiffs' federal claims are **DISMISSED WITH PREJUDICE** and Plaintiffs' supplemental claims are **DISMISSED WITHOUT PREJUDICE.** All other pending matters—Defendants' two remaining motions two dismiss—are hereby deemed as **MOOT**. Judgment shall be entered accordingly.

**SO ORDERED.**