Javier **GUZMAN**, Plaintiff, Appellant,

v.

**CITY OF CRANSTON, et al.,**
**Defendants, Appellees.**

**No. 86–1946.**

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1987.
Decided Feb. 25, 1987.

Michael K. Marran, with whom Julius C. Michaelson and Abedon, Michaelson, Stanzler & Biener, Providence, R.I., were on brief, for plaintiff, appellant.

Adrienne Southgate, with whom C. Russell Bengtson and Carroll, Kelly & Murphy, Providence, R.I., were on brief, for defendant, appellee William F. Reilly.

Before CAMPBELL, Chief Judge, BREYER and SELYA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This appeal is from the district court's dismissal of plaintiff's complaint against William F. Reilly for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The complaint alleged that on January 4, 1985, Javier Guzman was arrested by a police officer of the City of Cranston on charges of possessing controlled substances. He was detained overnight and arraigned on January 5, 1985. Bail was set, and Mr. Guzman, being unable to post bail, was held at the Adult Correctional Institution ("ACI"). On February 5, 1985, the Attorney General decided not to prosecute Guzman. However, the fact that the charges had been dropped was not disclosed to the court or the official at ACI until March 27, 1985, 50 days later, when Guzman was finally released.

Guzman brought an action under 42 U.S.C. § 1983 (1982) against several officials of the City of Cranston and the state of Rhode Island, including appellee William F. Reilly, Public Defender for the state of Rhode Island. The claims other than those against Reilly were settled and are not the subject of this appeal. In respect to the claim against Reilly, the complaint states that during plaintiff's incarceration at ACI, "an investigator from the Public Defender's Office, acting on behalf of Defendant Reilly, interviewed Plaintiff for the purpose of providing him legal representation." The complaint goes on to say that plaintiff provided the investigator with information concerning his case and a court document indicating that a superior court

arraignment was to be held on March 13, 1985; and that on March 24, 1985, another investigator interviewed plaintiff. The complaint then states that Reilly "*by and through his agents, servants and employees*, neglected, failed or refused to investigate Plaintiff's case and provide him with effective and timely assistance of counsel." As a result of Reilly's "intentional or reckless negligent failure to investigate Plaintiff's criminal case, Plaintiff was subjected to continued incarceration." (Emphasis supplied.)[1] Except for the conclusory allegation that plaintiff's right to be free from illegal detention, and to have the timely and effective assistance of counsel, resulted from "Defendant Reilly's intentional or reckless negligent failure to investigate Plaintiff's criminal case," the complaint says nothing tying Reilly *personally* into the harm that befell plaintiff.

In dismissing under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court, relying upon *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), held that William F. Reilly's actions, such as they were, had not been conducted "under color of state law." We need not consider this ground, however, as the claim against the Rhode Island Public Defender is defective for another reason. The complaint alleges that the harm to plaintiff occurred by and through Reilly's agents, servants, and employees. No facts are alleged from which to infer that Reilly's personal participation or gross neglect was a cause of the asserted failure or refusal to investigate plaintiff's case and to provide him with effective and timely assistance of counsel. It is not alleged that Reilly himself ever saw or met plaintiff or that whatever happened was a consequence of his instructions, policies or oversight. We assume that there is more than one attorney in the office of the Public Defender for the state of Rhode Island, and that the Public Defender does not personally oversee every case. Without more, it cannot be inferred that Reilly had the necessary personal connection with whatever happened to plaintiff. As noted, the com-

---

1. Counsel for Reilly's office argued below that the reason the office did not act was because it understood that plaintiff was engaging private counsel.

plaint says that Reilly acted "by and through his agents, servants and employees."

■ In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court said that the language of section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor." The same is true as to imposing liability on officials who exert supervisory functions, like appellee Reilly. The Supreme Court summarily rejected a client's claim against the head of a public defender's office, citing *Monell* and saying,

> Section 1983 will not support a claim [against the Offender Advocate, Polk County] based on a *respondeat superior* theory of liability. . . . To the extent that Dodson's claims rest on this basis, they fail to present a federal claim.

*Polk County v. Dodson*, 454 U.S. at 325, 102 S.Ct. at 453.

As the Fifth Circuit has stated, "[S]upervisory officials cannot be held liable solely on the basis of their employer-employee relationship with a tortfeasor," *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.1983). They will be liable only "when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation." *Id.* In a like vein, this court has said, "the supervisor must demonstrate at least gross negligence amounting to deliberate indifference, and . . . his conduct must be causally linked to the subordinate's violation of plaintiff's civil rights." *Voutour v. Vitale*, 761 F.2d 812, 820 (1st Cir.1985). *Miranda v. Munoz*, 770 F.2d 255, 260 (1st Cir.1985); *Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir.1984); *Kostka v. Hogg*, 560 F.2d 37, 40 (1st Cir.1977). *See also Hinshaw v. Dof-*

*fer*, 785 F.2d 1260, 1263 (5th Cir.1986); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir.1985); *Ashelman v. Pope*, 769 F.2d 1360, 1363 (9th Cir.1985).

■ Without alleged facts tying Reilly personally, by reason of his own cognizable action or inaction, into the conduct which harmed plaintiff, the district court did not err in dismissing the complaint. Absent such allegations, Reilly cannot be held liable for the actions of his subordinates.[2] The mere conclusory allegation that plaintiff's harm resulted from "Reilly's intentional or reckless negligent failure to investigate" is insufficient, especially where the complaint makes it otherwise clear that the sole basis of the claim is activities of Reilly's "agents, servants and employees." *See Dewey v. University of New Hampshire*, 694 F.2d 1, 3 (1st Cir.1982) (in actions under section 1983 "we insist that the claim at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why").

*The judgment of the district court is affirmed.*

---

2. We do not imply that if Reilly personally had been sufficiently tied into the conduct which is said to have deprived plaintiff of counsel, plaintiff's section 1983 claim against him would necessarily be legally sufficient. The state action issue which led the district court to dismiss would still have to be addressed. *See Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). In addition, it would have

to be decided whether the kind of malpractice plaintiff here alleges constitutes a deprivation of a federal right protected under section 1983. *Compare, e.g., Estate of Gilmore v. Buckley*, 787 F.2d 714 (1st Cir.1986) (state officials' failure to deter killer and warn homicide victim does not violate section 1983). We do not now pass judgment on either issue.