Eileen VEGA and Miguel Carrasquillo,
Plaintiff(s)

v.

Pierre VIVONI, Superintendent of the
Puerto Rico Police Department,
et. al.   Defendants

No. CIV. 02–1754(JAG).

United States District Court,
D. Puerto Rico.

Aug. 1, 2005.

Wilma E. Reveron–Collazo, Esq., San Juan, PR, for Plaintiffs.

Eduardo A. Vera–Ramirez, Esq., Eileen Landron–Guardiola, Esq., Judith Torres–De Jesus, Esq., Mariana Negron–Vargas, Esq., Luis A. Rodriguez–Munoz, Esq., Guaynabo, PR, for Defendants.

## PARTIAL JUDGMENT

GARCIA–GREGORY, District Judge.

In accordance with the Memorandum and Order issued today, the Court enters partial judgment **ADOPTING** the Magistrate–Judge's Report and Recommendation. (Docket No. 96). The Motion for Summary Judgment (Docket No. 78) is **DENIED** as to co-defendants Miguel Vega–Puig, Jose L. Figueroa and Elizabeth Morales, and **GRANTED** as to co-defendants Pierre Vivoni and Julio A. Rivera–Blondet. All claims against co-defendants Pierre Vivoni and Julio A. Rivera–Blondet are hereby **DISMISSED** with prejudice.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

VELEZ–RIVE, United States Magistrate Judge.

## INTRODUCTION

Plaintiffs Eileen Vega and Miguel A. Carrasquillo filed this federal complaint under 42 U.S.C. § 1983 claiming violations to their civil rights under the First, Fourth, Fifth, Eight and Fourteenth Amendments of the United States Constitution and supplementary jurisdiction under the laws of the Commonwealth of Puerto Rico. Defendants Julio A. Rivera Blondet, Miguel Vega Puig, José L. Figueroa and Elizabeth Morales are police officers and Pierre Vivoni was the Superintendent of the Puerto Rico Police. Plaintiffs allege that, while they attempted to file a complaint at the Yabucoa Police Station against a youngster who had threatened them with a pellet gun, they were involved in a verbal confrontation with the Police officers, were physically assaulted at the Police station, and thereafter charged in state courts with a plethora of accusations for assaulting Police officers. State charges filed against plaintiffs were dismissed for lack of probable cause. Accordingly, plaintiffs claim these defendants violated their constitutional rights.

Co-defendants Rivera Blondet, Vega Puig, Figueroa and Morales, together with co-defendant Pierre Vivoni as Police Superintendent at the time of the incident, filed a motion for summary judgment as to plaintiffs' federal civil rights lawsuit on grounds of qualified immunity. Plaintiffs filed their opposition (**Docket Nos. 78, 84**).

Then, the Court referred these motions to this Magistrate Judge for report and recommendation (**Docket No. 90**).

## FACTUAL BACKGROUND

On May 28, 2001, plaintiffs Eileen Vega and Miguel A. Carrasquillo went to the Yabucoa Police Station to file a complaint against several young men who had aimed their pellet rifles and fired their weapons, fortunately unloaded at the time, some two feet away from Mrs. Vega's face. The front desk officer informed plaintiffs they had to wait for the patrolman on duty to arrive. Mrs. Santa Maldonado, a civilian, was present at the Police station at the time to file an unrelated complaint. Complaint ¶ 12; Docket No. 93, Exhibits 1, 6 (plaintiffs' sworn statements Internal Affairs Office).

When co-defendant Officer Elizabeth Maldonado arrived at the station, she began to take down Mrs. Vega's complaint but Officer Maldonado's cellular phone rang and she left the complainants unattended, without excusing herself, to attend a personal call. When Officer Maldonado

started again to take notes of the complaint, two (2) agents in civilian clothes arrived. The complaint taking was again interrupted while Officer Maldonado greeted and kissed the arriving personnel. On a third attempt to take care of Mrs. Vega, Officer Maldonado interrupted the process once more while she sustained a conversation with one of the agents in civilian clothes. These agents were later identified as co-defendants Figueroa and Vega. *Id.* ¶ 16–18; Docket No. 93, Exhibits 1, 6.

Once Mrs. Vega stated she would be leaving the station because her claim was not being taken care of, plaintiff Mr. Carrasquillo exchanged words with Officer Maldonado and they both raised their voices. Co-defendant Figueroa became upset and upon banging on the counter, aggressively rushed around Mr. Carrasquillo, and assaulted him by hitting him on the neck. Co-defendant Vega reacted the same way and also struck Mr. Carrasquillo, while another officer identified as Rodríguez, stepped in the middle to prevent agents Figueroa and Vega from continuing to hit plaintiff Carrasquillo. Complaint ¶¶ 23–25, Docket No. 93, Exhibits 1, 6 (statements of plaintiffs Mrs. Vega, Mr. Carrasquillo) and Attachment 1 (Mrs. Santa Maldonado's sworn statement before Internal Affairs Office).

Mrs. Vega stated to the co-defendants who were hitting Mr. Carrasquillo they could not do that and she was pushed to the side, losing her balance and grabbing Mr. Figueroa's shirt, who held her by the arms and shook her until she screamed out loud. Mr. Carrasquillo took the opportunity to leave the enclosed Police quarters and placed himself outside the Police station while making a telephone call to his father. Meanwhile, agents Figueroa and Vega were being calmed down by other officers and kept from following Mr. Carrasquillo. *Id.* ¶ 24; plaintiffs' sworn statements before Internal Affairs Office; Mrs. Santa Maldonado's statement.

Co-defendant Julio A. Rivera Blondet, a Puerto Rico Police Sargent, subsequently arrived. He insisted that Mr. Carrasquillo go back into the Police station, although his father had not yet arrived, on grounds plaintiffs seemed to have assaulted a Police officer and could be therein arrested. Upon questioning plaintiffs, Sargent Rivera Blondet addressed them and excused the officers' previous actions and behavior. Plaintiffs then told Sargent Rivera Blondet he was displaying favoritism towards his fellow workers. Sargent Rivera Blondet stood up and left indicating he could no longer take care of plaintiffs' case until a higher ranking Police officer arrived to take charge. Then Lt. Monclova arrived and took down the information as to the events that transpired and forwarded the same to the Area Commander.

Afterwards, Agent Elizabeth Morales was ordered to investigate the complaint that originated plaintiffs' visit to the Yabucoa Police Station. As a result of these events, an investigation ensued at the Internal Affairs Office of the Puerto Rico Police and on the following day, May 29, 2001, plaintiffs visited the Humacao District Police Quarters to provide sworn statements as to the incidents with the Police officers of the Yabucoa Station. Complaint ¶ 33; Docket No. 93, Exhibits 1, 6, and attachment 1.

The Internal Affairs Office informed plaintiffs they were to appear in state court, Humacao Section, the following Wednesday. Upon attending, plaintiffs were surprised to find accusations had been filed against them on felony and misdemeanor charges for assaulting police officers Figueroa and Vega, attempt to cause bodily harm to agent Elizabeth Morales, and obstruction of justice. These accusations were soon after dismissed by the

state court judge for lack of probable cause, except for the obstruction of justice charge against Mr. Carrasquillo under Article 256 of the Puerto Rico Penal Code. After initial proceedings, the parties agreed the remaining charge against Mr. Carrasquillo would be dismissed without condition, under Rule 247(a) of the Puerto Rico Rules of Criminal Procedure, although some discrepancies ensued on whether plaintiffs would waive or not their right to file subsequent judicial proceedings in state or federal court. *See* Minutes of September 24, 2001 and October 22, 2001 (Exhibit 8 a-h).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997). After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." *Greenburg v. Puerto Rico Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997).

Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); *see also Tew v. Chase Manhattan Bank, N.A.,* 728 F.Supp. 1551, 1555 (S.D.Fla.1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'"). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported

speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

## LEGAL ANALYSIS

### A. CO–DEFENDANTS' LIABILITY: MIGUEL VEGA PUIG, JOSE L. FIGUEROA and ELIZABETH MORALES.

Co-defendants Vega Puig, Figueroa and Morales claim they are entitled to summary judgment on grounds of qualified immunity. To support this entitlement, these co-defendants submit that, pursuant to the defendants' statement of uncontested facts, the use of force used by the agents during the altercation with plaintiffs was not excessive.

Co-defendant Figueroa submits the situation clearly required him to subdue Mr. Carrasquillo and to show him respect for his fellow officers [Agent Morales] before the incident escalated. Summary Judgment ¶ 8–9; Docket No. 87, Exhibit 5, deposition testimony of Figueroa. The physical intervention of co-defendant Figueroa with Mr. Carrasquillo was limited to a few pushes. Co-defendant Vega Puig's intervention with Mr. Carrasquillo was to separate him from Figueroa and escort him out of the building.

As to plaintiff Vega, above co-defendants aver she got in a physical confrontation with Figueroa, ripped his shirt, and scratched his chest. Agent Figueroa's only reply was to take her by the arms and sit her down. Upon revisiting the events, co-defendants submit they could have been less confrontational in tone and sympathetic to the fact plaintiffs had waited to have their complaint filed and were interrupted by Agent Morales. However, since Morales is a Police woman, the male officers submit she lacked the advantage of strength to confront Mr. Carrasquillo without the use of her firearm, if it had been necessary, for which agents Figueroa and Vega Puig diffused a more explosive situation with the use of reasonable force.

Plaintiffs filed in their complaint and the sworn statements attached to their opposition to summary disposition conclusive allegations regarding above co-defendants' involvement in the violation of their constitutional rights. In summary judgment scenario all reasonable doubts and issues of credibility are resolved in the non-movant's favor. *Rivera–Rodriguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15 (1st Cir.2001); *Landrau–Romero v. Banco Popular De Puerto Rico,* 212 F.3d 607, 611 (1st Cir.2000). The Court is to examine the entire record in light most flattering to non-movant. *Cadle Co. v. Hayes,* 116 F.3d 957 (1st Cir.1997); *Maldonado Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiff Carrasquillo's sworn statement before the Internal Affairs Office on May 29, 2001, was to the effect agent Figueroa, who had just arrived at the Yabucoa Police Station and did not know what had previously transpired, listened to his conversation with Agent Morales, jumped on him and gave him a blow on the neck with both hands; Officer Vega acted in the same manner but with the help of Officer Rodríguez it became possible to avoid his punches. His wife, Mrs. Vega was assaulted. When Officer Figueroa punched Mr. Carrasquillo, he lost his balance and fell on Mrs. Santa Maldonado, who was filing an unrelated complaint at that time. Insofar as Sgt. Rivera Blondet, plaintiff Carrasquillo avers he threatened with arresting him unless plaintiffs would go inside the Yabucoa Police Station for an interview

after the events had transpired and, when told he was taking the investigation in a personal manner, Sgt. Rivera Blodent left the place and turned over the case to the officer on duty, Lt. Monclova. Docket No. 84, Opposition Summ. Judg.; Docket No. 93 Exhibit 7.

Plaintiff Vega's sworn statements before the Internal Affairs Office and her statement under penalty of perjury attached to the opposition to summary judgment indicate that, when her common-law husband, Mr. Carrasquillo, and Agent Morales raised their voices, Agent Figueroa got desperate and upset, banged on the counter and rushed out around the counter, aggressively addressed Carrasquillo, and struck him on the neck. When Agent Vega saw his Police partner's reaction, he reacted the same way by attacking Mr. Carrasquillo but another Police Officer named Rodríguez was able to step in the middle to prevent those two agents from hitting Mr. Carrasquillo; that Agent Figueroa pushed her to the side, she then lost her balance and held on to Agent Figueroa's shirt, who then grabbed and shook her until she screamed so loud he reacted and stopped. At this time, Mr. Carrasquillo was able to get outside the Police station, while being followed by co-defendants Figueroa and Vega, but Police Officer Rodríguez ran outside to interpose himself again between them. After all the above had transpired, Sgt. Rivera Blondet arrived and insisted for plaintiffs to get inside the Police station and tried to fix the situation. When Sgt. Rivera Blondet began to justify the other agents' actions, he was told by plaintiffs he was showing favoritism for which he decided to leave until a lieutenant, who was called, arrived at the Yabucoa Police Station. Subsequently, it was Lt. Monclova who took the information and forwarded it to the Area Commander. Co-defendant Figueroa was the one who assaulted Mr. Carrasquillo and the one who grabbed Mrs. Vega. Docket No. 84, Opposition to Summ. Judg.; Docket No. 86; Docket No. 93, Exhibit 2.

Mrs. Santa Maldonado also provided a sworn statement before the Internal Office Affairs. Succinctly, she indicated she was present at the Yabucoa Police station to file an unrelated complaint and observed when Mr. Carrasquillo questioned Agent Morales as to why she was not attending Mrs. Vega's attempt to file a complaint, one of the agents became upset, came out to the counter, grabbed and pushed Mr. Carrasquillo with a slap on the chest and pinned him against the wall. If she had not moved from the site quickly, Mr. Carrasquillo would have fallen on top of her. When Mrs. Vega started to cry and ask why her husband was being hit, the same agent pushed her against her husband and Mrs. Vega grabbed the agent so as not to fall down. Although Mrs. Maldonado overheard one of the agents telling Mrs. Vega not to strike him, Mrs. Maldonado did not see her striking the agent at any moment, but rather Mrs. Vega was holding on to agent to keep him from hitting her husband Mr. Carrasquillo. When both plaintiffs went outside the Police station, the agent who hit them rushed outside as if to hit Mr. Carrasquillo again but another officer, with last name Rodríguez, held him back, telling him to calm down. Mrs. Maldonado left without filing her complaint but provided Sgt. Rivera Blondet with her name and address upon being told they would go later to her house to file her complaint. No Police officer ever showed up. At no time did Mrs. Maldonado *see* Mrs. Vega or Mr. Carrasquillo cursing or saying anything insulting to any police agent. She saw one of the agents, who arrived at the Police station dressed in civilian clothes, assaulting Mr. Carrasquillo. Docket No. 84, Opposition to Summ. Judg.; Docket No. 93, Exhibit 1.

A careful review of the attachments filed to plaintiffs' opposition to defendants' motion for summary judgment, in addition to the above discussed sworn statements, present factual contradictions of genuine issues of facts related to actions of co-defendants Vega Puig, Figueroa and Morales that cannot be elucidated by way of a motion for summary judgment as requested.[1] Docket No. 84, depo. plaintiffs Carrasquillo and Vega, Exhibits 3, 4; Docket No. 86, Eileen Vega's statement under penalty of perjury.

■ There is no room for credibility determinations or for the measured weighing of conflicting evidence at the summary judgment level. The arguments of use of reasonable or excessive force is a determination predicated on facts that, at this stage of the proceedings, are controverted by plaintiffs' sworn statements, the statement of a third party who was present at the Yabucoa Police station, and records of administrative investigation on the events.

As such, it is recommended the summary judgment requested by co-defendants Morales, Vega Puig and Figueroa BE DENIED.

## SUPERVISORY LIABILITY AND QUALIFIED IMMUNITY AS TO CO-DEFENDANTS VIVONI AND RIVERA BLONDET.

Plaintiffs' claims as to co-defendants Rivera–Blondet and Vivoni are predicated on their liability for failure to train, conduct, supervise and discipline Puerto Rico Police officers under their command.

■ A supervisor may be found liable under § 1983 on the basis of his own acts or omissions, but liability may not be predicated upon a theory of *respondeat superior*. A supervisor may also be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it. Plaintiffs must, however, show that there is "an 'affirmative link' between the sheet-level misconduct and the action, or inaction, of supervisory officials." *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 561–562 (1st Cir.1989) (*quoting Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). Plaintiff can establish a causal link "if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Id. See Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 48 (1st Cir.1999). Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ Section 1983 does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393–394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In order to establish liability under Section 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." *Destek Group, Inc. v. State of New Hampshire Public Utilities Com'n*, 318 F.3d 32, 39 (1st Cir.2003); *DiMarco–*

---

1. Puerto Rico Police Agents Morales, Vega Puig and Figueroa submitted under oath on May 30, 2001, criminal charges against both plaintiffs, as to which Humacao District Court Judge found no probable cause after a preliminary hearing. Translated documents related to state charges were included with plaintiffs' opposition to summary judgment. Docket Nos. 86, 93; Exhibits 8a–h.

*Zappa v. Cabanillas*, 238 F.3d 25, 33 (1st Cir.2001).

■ Secondly, a plaintiff must show the defendant's conduct deprived a person of rights, privileges or immunities secured by the Constitution of the United States. *Gutierrez–Rodriguez*, 882 F.2d at 559. There are two aspects to the second inquiry: "(1) there must have been a deprivation of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been causally connected to the deprivation." *Id.* This second element of casual connection requires the plaintiff to establish for each defendant that the defendant's own actions deprived plaintiff of his/her protected rights, *Monell v. Department of Social Services*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), *Gutierrez–Rodriguez*, 882 F.2d at 562; and that the defendant's conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference to plaintiff's constitutional rights. *Simmons v. Dickhaut*, 804 F.2d 182, 185 (1st Cir.1986).

■ Liability may not be predicated upon a theory of *respondeat superior. See Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901–02 (1st Cir.1988); *Guzman v. City of Cranston*, 812 F.2d 24, 26 (1st Cir.1987). A supervisor "may be found liable only on the basis of her own acts or omissions." *Figueroa v. Aponte–Roque*, 864 F.2d 947, 953 (1st Cir.1989). It must be shown that the supervisor's conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others. *Gutierrez–Rodriguez*, 882 F.2d at 562; *see Germany v. Vance*, 868 F.2d 9, 17–18 (1st Cir.1989). Finally, there must be an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials. *Rizzo v. Goode*, 423 U.S. at 371, 96 S.Ct. 598; *Lipsett*, 864 F.2d at 902; *Gutierrez–Rodriguez*, 882 F.2d at 562.

■ Based on Supreme Court precedent, the First Circuit employs a three-part test when determining if a public official is entitled to qualified immunity: (1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood the challenged action violated the constitutional right at issue. *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir.2004).

■ A review of the complaint, attachments to the motion for summary judgment, and the opposition depicts only one incident in which it is alleged co-defendant Figueroa's actions might support a claim of civil rights violation in relation to herein plaintiffs' predicament at the Yabucoa Police station. There is no claim, evidence, or supporting document, except for arguments of plaintiffs' counsel in the opposition, from where plaintiffs could establish a known pattern of previous police misconduct, lack of training, or acts of omissions indicating co-defendants Rivera Blondet and Vivoni could be on notice their prompt or remedial actions would have prevented plaintiffs' alleged injuries.[2] Plaintiffs' claim of excessive force and/or civil rights violation at the Yabucoa Police station were immediately addressed through an administrative process in effect wherein sworn statements from witnesses were taken and duly preserved. Documents at-

---

**2.** Deposition testimony of co-defendant Figueroa submitted with the Motion for Summary Judgment refers to two prior administrative job suspensions during his sixteen year tenure as a law enforcement officer; one related to failure to submit a draft of a report and another for a three (3) day work absence. Docket No. 87, Exhibit 5.

tached to plaintiffs' opposition show Sgt. Rivera Blondet participated in the filing of state criminal charges against plaintiffs. *See* Minutes of witnesses' examination (Docket No. 93, Exhibits 8a-d). However, the extent of his knowledge of these events must have been limited to his initial interview with plaintiffs at the Yabucoa Police station since there is no controversy Sgt. Rivera Blondet arrived after events that originated plaintiffs' claims had transpired. The fact that in a later proceeding the judge found no probable cause and dismissed the charges against plaintiffs would not make Sgt. Rivera Blondet liable. *See Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir. 1985) ("Despite a finding of no probable cause at a later hearing, a police officer should not be found liable under § 1983 for a warrantless arrest because the presence of probable cause was merely questionable at the time of arrest."). *See Alvarez Sepulveda v. Colon Matos,* 247 F.Supp.2d 76, 82 (D.Puerto Rico 2003).

Once Sg. Rivera Blondet was informed, at the initial interview, of plaintiffs' concern for his impartiality, he referred the investigation and related issues to a higher ranking officer, Lt. Monclova, who then fulfilled proceedings and referred the matter to the Area Commander for an administrative investigation.

Thus, plaintiffs have failed to address or explain how co-defendants Rivera Blondet and Vivoni, committed grossly unconstitutional actions or more importantly, how were they personally involved in the alleged unconstitutional actions. Plaintiffs only allegations as to co-defendants Rivera Blondet and Vivoni stem from occupying supervisory position within the Puerto Rico Police Department and thus being in charge of monitoring, evaluating, disciplining and training officers within their supervision. In plaintiffs' complaint, they submit these co-defendants' liability was

based on those acts of police officers who in fact were personally involved. There is no evidence of improper training and/or supervision, so as to constitute breach of the duty owed to train, conduct, supervise and discipline all police officers under their command. Complaint ¶¶ 4, 6.

Therefore, plaintiffs' factual allegations against co-defendants Pierre Vivoni and Sgt. Rivera Blondet are insufficient to meet the stringent criteria for "failure to train" claims. *Hayden v. Grayson,* 134 F.3d 449, 456 (1st Cir.1998). It is well established that "an arguable weakness in police training (or supervision does) not amount to a policy of failure to train arising from deliberate indifference to citizen's constitutional rights." *See Burns v. Loranger,* 907 F.2d 233, 239 (1st Cir.1990); *Alvarez Sepulveda v. Puerto Rico,* 218 F.Supp.2d 170, 176 (D.Puerto Rico 2002).

▆ Having examined the summary judgment request, its opposition, and all attachments thereof, plaintiffs have submitted no factual dispute as to necessary elements that are required for a cause of action of civil rights claim as to co-defendant Rivera Blondet and Vivoni, for which summary disposition is appropriate since supervisors are not automatically liable for the misconduct of those under their command and plaintiffs need to show an affirmative link between the subordinate officer and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization, deliberate indifference or willful blindness or refute the summary disposition request that co-defendant's acts satisfies the test of objective legal reasonableness being thus entitled to qualified immunity. *Harlow v. Fitzgerald,* 457 at 819, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396.

Plaintiffs' general allegations, while arguing the opposition to summary judgment

that the administrative process followed was a mock investigation which shows an established policy of letting police officers off the hook, without more, coupled with the strict protections of co-defendants' qualified immunity above discussed, lead this Magistrate Judge to recommend that co-defendants Rivera Blondet and Vivoni summary judgment request based on qualified immunity BE GRANTED.

## B. PENDENT JURISDICTION CLAIMS.

Plaintiffs contend in their second cause of action that defendants' actions violated Article II, Sections 1, 4, 6–8 and 10 of the Constitution of the Commonwealth of Puerto Rico and 31 L.P.R.A. Sections 5141 and 5142.

■ Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).[3]

In *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *See Martinez v. Colon*, 54 F.3d 980, 990 (1st Cir.1995).

The preferred approach is pragmatic and case-specific. Thus, in "an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir.1995); *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 257 (1st Cir. 1996).

■ Since plaintiffs would not be entitled to an award as to co-defendants Rivera Blondet and Vivoni under federal law, any claim they attempt to pursue against these co-defendants would be governed by Commonwealth statutes. Therefore, it is recommended not to exercise any pendent jurisdiction of plaintiffs' claims against co-defendants Rivera Blondet and Vivoni under the laws and the Constitution of the Commonwealth of Puerto Rico since the exercise of pendent jurisdiction is discretionary.

## CONCLUSION

In view of the foregoing, it is recommended that co-defendants Rivera Blondet, Vega Puig, Figueroa, Morales and Vivoni's Motion for Summary Judgment BE GRANTED in part and DENIED in

---

**3.** *See Ponce Federal Bank v. The Vessel "Lady Abby"*, 980 F.2d 56 (1st Cir.1992) (Nonfederal claim against a person not otherwise a party in a case is sufficiently related to an admiralty claim to permit assertion of pendent party jurisdiction if state law claim against additional party arises out of common nucleus of operative facts with admiralty claim and resolution of factually connected claims in single proceeding would further interests of conserving judicial resources and fairness to parties).

part. Accordingly, it is recommended the summary request as to co-defendants Miguel Vega Puig, Jose L. Figueroa and Elizabeth Morales BE DENIED and the summary request as to co-defendants Pierre Vivoni and Sgt. Julio A. Rivera Blondet BE GRANTED.

Furthermore, it is recommended to the Court not exercise pendent jurisdiction as to plaintiffs' claims under state law against co-defendants Vivoni and Rivera Blondet.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir.1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

August 1, 2005.